UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JASON CHAPA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. C-10-359 |
| § | |
| CHASE HOME FINANCE LLC, § | |
| § | |
| Defendant. § | |

## ORDER

Pending before the Court is Defendant JP Morgan Chase Home Finance, LLC's Motion to Dismiss for Failure to State a Claim, or, in the Alternative, for More Definite Statement. (D.E. 6) Plaintiff has not responded.[1] For the reasons stated herein, said motion is DENIED IN PART and GRANTED IN PART. Specifically, Defendant's Motion to Dismiss Plaintiff's Claims is DENIED. Defendants' Motion for a More Definite Statement is GRANTED with respect to all of Plaintiff's claims. Plaintiff has fourteen (14) days to amend his complaint to satisfy the pleading standards of Fed. R. Civ. P. 8(a)(2).

**I.     Jurisdiction**

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Defendant Chase Home Finance, LLC ("Chase") is incorporated in Delaware with a principal place of business in New Jersey.[2] Plaintiff Jason Chapa is a citizen of Texas. The amount in controversy exceeds $75,000 because the value of Plaintiff's home is appraised at $136,603.00. See Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983) ("In actions seeking declaratory or injunctive relief the amount in controversy is measured by the value of the object of the

---

[1] As such, Defendant's motion is deemed unopposed. L.R. 7.4.
[2] The Notice of Removal indicates that the sole member of Chase is Chase Home Finance, Inc., a corporation formed under the laws of Delaware with its principal place of business in New Jersey.

litigation.") (quoting <u>Aladdin's Castle, Inc. v. City of Mesquite</u>, 630 F.2d 1029 (5th Cir.1980)). Defendant timely removed this action on November 1, 2010 pursuant to §1446(b). (D.E. 1.)

## II. Factual Background

Plaintiff's Original Petition alleges as follows:

On or about January 20, 2010, Plaintiff entered negotiations with Defendant Chase to modify Plaintiff's existing home loan. "Around the same time," Chase requested that its agent, Barrett, Daffin Frappier Turner & Engel, LLP begin foreclosure proceedings. (D.E. 1, Ex. A-4, p. 2.) However, Chase subsequently forestalled foreclosure proceedings to allow Plaintiff an opportunity to be approved for a Home Loan Modification. (<u>Id</u>.) Chase requested a number of documents from Plaintiff, which were to be sent to the Chase Fulfillment Center. Specifically, Chase requested: Letters of Hardship, Bank Statements, Wages, Tax Returns and a Financial Worksheet. (<u>Id</u>.) Plaintiff sent these documents and upon every request sent additional documents. The documents were to be updated every 90 days. (<u>Id</u>.)

Plaintiff contends that, through its actions, Chase indicated to Plaintiff that no foreclosure would be executed until Chase's modification review was either approved or denied. (<u>Id</u>. at 3.) Nonetheless, Defendant apparently determined that Plaintiff's residence would be auctioned on November 2, 2010. (<u>Id</u>. at 5.)

Plaintiff filed this action in state court on November 1, 2010, bringing the following Texas state law causes of action against Chase: (1) breach of contract; (2) breach of duty of good faith and fair dealing and equitable estoppel; (3) misrepresentation; (4) Deceptive Trade Practices Act (DTPA), §17.46; and (5) negligence. (<u>Id</u>. at 3-7.) Plaintiff also sought a Temporary Restraining Order (TRO) to restrain foreclosure of his home. (<u>Id</u>. at 7.)

Defendants were served November 1, 2010 and timely removed the action to this Court on November 11, 2010 based on diversity jurisdiction. (D.E. 1, p. 1.)

In its Motion to Dismiss, filed on November 19, 2010, Defendant Chase seeks to dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Chase requests that Plaintiff be ordered to plead specific facts in support of his causes of action to provide Chase with fair notice of the claims. (D.E. 6, p. 1-2.) Plaintiff has not responded. Defendant's motion is deemed unopposed. L.R. 7.4.

## III. Discussion

### A. The Legal Standards

#### 1. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). However, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." Id. at 1949-50.

In Iqbal, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory

allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1951. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." Id. "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." Morgan v. Hubert, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. At 1950.

### 2. Motion for More Definite Statement

A motion for more definite statement is proper when a complaint is so vague that a defendant cannot frame a responsive pleading. Fed. R. Civ. P. 12(e); Sisk v. Texas Parks & Wildlife, 644 F.2d 1056, 1059 (5th Cir. 1981). ("Under Rule 8(a) F.R.C.P. the complaint need only contain a 'short and plain statement of the claim showing the pleader is entitled to relief.' If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e) F.R.C.P.") (citing 5 Wright & Miller, Fed. Practice & Procedure: Civil § 1356 at 590-591).

Federal Rule of Civil Procedure 15(a) allows amendment of the pleading once as a matter of course before service with a responsive pleading or within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Federal Rule of Civil Procedure 15(a), in combination with other Federal Rules, "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to

the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.  The Fifth Circuit has repeatedly held that Rule 15(a) evinces a liberal amendment policy." Johnson v. Metabolife Intern., Inc., 2002 WL 32494514, at *4 (N.D. Tex. October 23, 2002) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957)) (citing Lowrey v. Texas A & M University System, 117 F.3d 242, 245 (5th Cir.1997); Nance v. Gulf Oil Corporation, 817 F.2d 1176, 1180 (5th Cir.1987); Youmans v. Simon, 791 F.2d 341, 348 (5th Cir.1986)).  Thus, "there is a strong presumption in favor of granting leave to amend."  Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 291 (5th Cir. 2006).

### B. Analysis

The Court addresses Defendant's Motion to Dismiss and/or Motion for More Definite Statement with respect to each of Plaintiff's claims: (1) breach of contract; (2) breach of duty of good faith and fair dealing and equitable estoppel; (3) misrepresentation; (4) DTPA, §17.46; and (5) negligence.

#### 1. Breach of Contract

Under Texas law, the elements for a breach of contract cause of action are:  (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.  See Hussong v. Schwan's Sales Enterprises, 896 S.W.2d 320, 326 (Tex. App.--Houston 1995).  A valid contract is not formed in the absence of bargained-for consideration. Peterson v. Dean Witter Reynolds, Inc., 805 S.W.2d 541, 550 (Tex. App.-Dallas, 1991, no writ).  There is no consideration when the promise at issue is to perform a preexisting duty.  3 Williston on Contracts § 7:39 (4th ed.2000).

Plaintiff appears to assert two theories to support his breach of contract claim. The Court addresses each in turn.

### a. Breach of Contract Created During Loan Modification

Plaintiff appears to allege that a written and/or oral contract was created during the loan modification process, under which Defendant was obligated to forego auctioning Plaintiff's home pending loan modification. In his cause of action for breach of contract, Plaintiff alleges that Chase "led the borrower to believe it would lend or modify that loan." (D.E., Ex. A-4, p. 3.) He alleges that "[t]he borrower obtained the impression from the lender's conduct, oral and written declarations that the lender would modify the loan and pending the modification process would not auction the residence." (Id.) In his general facts section, Plaintiff specifies that loan modification negotiations with Chase began on or about January 20, 2010. (Id. at 2.) He alleges that Chase requested a number of documents from him, and that he supplied Chase with these documents. (Id.)

Plaintiff has not pled factual allegations that plausibly suggest an entitlement to relief under a claim for breach of contract. Iqbal, 129 S.Ct. at 1951. The first element of a breach of contract claim requires that a valid contract exists. Hussong, 896 S.W.2d at 326. Taken as a whole, Plaintiff's allegations potentially indicate that Plaintiff believed a contract was formed between himself and Chase during loan modification negotiations, in which Chase promised to delay foreclosure pending the modification process, and that "written declarations" potentially exist to evidence this alleged contract. However, Plaintiff does not allege that Chase ever agreed to postpone foreclosure (let alone that Chase did so in writing)[3] or that Plaintiff gave

---

[3] Defendant does not raise statute of frauds as a defense. However, under the Texas law statute of frauds, "a loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." See Tex. Bus. & Com.Code § 26.02(a)(2). When a modification relates to a matter that must be in writing, the

consideration in exchange for such a promise. Plaintiff also does not allege a contract arose under the doctrine of promissory estoppel or allege facts indicating that he materially changed his position in reliance on any promise from Chase not to foreclose on his home.[4] Nor do Plaintiff's allegations raise a "reasonable expectation" that discovery will reveal these missing elements. Morgan, 335 F. App'x at 470.

Although dismissal would be warranted under the pleading standard articulated in Iqbal. 129 S. Ct. at 1949-51, the Fifth Circuit generally recognizes that where "a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e). Sisk, 644 F.2d at 1059 (citing F.R.C.P. 5 Wright & Miller, Fed. Practice & Procedure: Civil § 1356 at 590-591). Leave to amend should be liberally granted under Rule 15(a). Blackwell, 440 F.3d at 291. Accordingly, Defendant's motion for a more definite statement is granted with respect to Plaintiff's breach of contract claim based on a contract allegedly created during the loan modification process.

---

modification also must be in writing. Deuley v. Chase Home Finance LLC, No. 4:05-CV-4253, 2006 WL 1155230 at *2 (S.D.Tex. April 26, 2006) (citing Garcia v. Karam, 154 Tex. 240, 276 S.W.2d 255, 257 (Tex.1955)); see also Burnette v. Wells Fargo, 2010 WL 1026968, * 5 (E.D. Tex. February 16, 2010). Plaintiff does not indicate whether the original loan was for more than $50,000. If so, Plaintiff must satisfy the statute of frauds. Plaintiff alleges merely that Defendant made "written declarations" that gave him the impression Defendant would not auction the residence pending the modification process. Plaintiff is urged in his amended complaint to indicate more specifically what these "written declarations" entailed.

[4] The elements of promissory estoppel are (1) a promise; (2) foreseeability of reliance by the promisor; and (3) substantial reliance by the promisee to his detriment. English v. Fischer, 660 S.W.2d 521, 524 (Tex.1983); Sandel v. ATP Oil & Gas Corp., 243 S.W.3d 749, 753 (Tex.App.-Houston [14th Dis.] 2007). To demonstrate detrimental reliance, a plaintiff must show that he materially changed his position in reliance on the promise. Id. at 524. Promissory estoppel does not apply to a promise covered by a valid contract between the parties, but it does apply to a promise outside of the contract. Richter v. Wagner Oil Co., 90 S.W.3d 890, 899 (Tex.App.-San Antonio 2002, no pet.); El Paso Healthcare Sys., Ltd. v. Piping Rock Corp., 939 S.W.2d 695, 699 (Tex.App.-El Paso 1997, writ denied). Also, for estoppel to be a defense to the statute of frauds, the promisee must establish that the promisor "promised to sign a written document complying with the statute of frauds." Ford v. City Bank of Palacios, 44 S.W.3d 121, 138-140 (Tex.App.-Corpus Christi 2001, no pet.) (citing Nagle v. Nagle, 633 S.W.2d 796, 800 (Tex.1982)).

### b. Breach of Underlying Note or Deed of Trust

Plaintiff also appears to allege breach of contract based on Defendant's alleged breach of the underlying note or the deed of trust securing the note with a lien on his property. (D.E. 1, Ex. A-4, at 3). Plaintiff contends that "Defendant has an absolute obligation to provide Plaintiff with a reasonable opportunity to cure any alleged default in the underlying note." (Id.) (citing Ogden v, Gibraltar Savings Association, 640 S.W.2d 232 (Tex. 1982.) Plaintiff contends he was given no opportunity to cure the default because "[o]ne cannot cure when the amount of the indebtedness is in dispute or when there are negotiations going on to modify the loan." (Id.)

In Ogden v. Gibraltar Savings Association, cited by Plaintiff, the Texas Supreme Court held that "[w]here the holder of a promissory note has the option to accelerate maturity of the note upon the maker's default, equity demands notice be given of the intent to exercise the option. Thus, in the absence of a waiver, the holder of a delinquent installment note must present the note and demand payment of the past due installments prior to exercising his right to accelerate. In the case of a mortgage secured by a deed of trust, such notice must afford an opportunity to cure the default and bring home to the mortgagor that failure to cure will result in acceleration of the note and foreclosure under the power of sale. If, after such notice, the mortgagor fails to remedy the breach, then the mortgagee is authorized to accelerate maturity and begin foreclosure proceedings under the deed of trust." 640 S.W.2d at 233 (citations removed.) The court further found that a letter from the lender stating that "[f]ailure to cure the breach may result in acceleration" did not make clear to the mortgagor that the lender would unequivocally exercise its option of acceleration unless the default was cured. Id. at 234 (emphasis added). Rather, the "may" language was not "clear and unequivocal" notice of the lender's intent to accelerate. Id.

Ogden has come to stand for the proposition that effective acceleration requires both "(1) notice of intent to accelerate, and (2) notice of acceleration," Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001) (citing Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 892 (Tex. 1991); Ogden, 640 S.W.2d at 233), and that "[b]oth notices must be "clear and unequivocal." Id. (quoting Shumway, 801 S.W.2d at 893.)

Here, Plaintiff potentially states a claim for breach of the terms of the underlying promissory note or deed or trust by Defendant; and Plaintiff's claim should not be dismissed to the extent it is based upon a violation of the underlying promissory note or deed of trust. See Burnette v. Wells Fargo Bank, N.A., 2010 WL 1026968, * 6 (E.D. Tex. February 16, 2010); Williams v. Countrywide Home Loans, Inc., 504 F.Supp.2d 176, 193-94 (S.D. Tex. 2007). However, Plaintiff has not attached or referenced the underlying promissory note or the deed of trust lien on his property, and has not indicated whether either document contained an acceleration clause or a waiver of notice of acceleration clause. Nor has Plaintiff indicated whether Defendant failed to give notice of acceleration or, if Defendant did give notice, why notice of intent to accelerate was inadequate.[5]

In sum, because Plaintiff has failed to provide the loan documents and failed to indicate which loan documents – let alone which provisions – were breached, Plaintiff has failed to satisfy the pleading standards of Rule 8(a).  See Smith v. Nat'l City Mortg., 2010 U.S. Dist.

---

[5] Elsewhere in the Original Petition, in support of his request for a TRO, Plaintiff repeats his assertion that notice was inadequate. He states: "the terms of the Deed of Trust are not strictly adhered to because the names of the trustee are not clear." He also states that "notice does not inform Plaintiff[sic] of the terms, conditions and amounts of outstanding indebtedness secured by the Deed of Trust being foreclosed upon. In addition, Plaintiff would show that the attempted acceleration and Notice of Foreclosure identified hereto [sic] fails to state the amount of principal, accrued and unpaid interest and per diem. Accordingly the notice of acceleration and notice of intent to foreclose, fails to permit the Plaintiff to redeem the Property by providing to the Plaintiff adequate notice of terms for purposes of redemption. Therefore, the notice is ipso facto, invalid and should not permit foreclosure." (D.E. 1, Ex. A-4, p. 7-8.) Plaintiff is urged to incorporate these allegations into his claim for breach of contract, indicating with more specificity how they amount to a violation of the applicable legal standards for notice and how such a violation amounts to a breach of contract. See Holy Cross Church of God in Christ, 44 S.W.3d at 566; Williams, 504 F.Supp.2d at 193-94.

LEXIS 86221 at *33-34 (W.D. Tex. Aug. 23, 2010) (dismissing breach of contract claim in 12(b)(6) motion where plaintiffs "d[id] not specify what provision or for that matter what contract was allegedly breached[]" and "fail[ed] to specify where 'the promise to obtain a loan that did not include a three year pre payment penalty' was memorialized in the loan documents.") (citing Mae v. U.S. Property Solutions, 2009 U.S. Dist. LEXIS 36126, 2009 WL 1172711 at *2 (S.D. Tex. April 28, 2009) (dismissing breach of contract claim where property owner failed to assert which provision of the loan was allegedly breached); L.L.C., Powell v. Residential Mortg. Capital, 2010 U.S. Dist. LEXIS 59698, 2010 WL 2133011 at * 7 (N.D. Cal. May 24, 2010) (holding that plaintiff's allegation that "Defendants promised to provide Plaintiff with an affordable loan" was vague, did not allege where such a promise was memorialized or what consideration was given for such a promise, and thus failed to show the existence of a contract.))

Defendant's motion for a more definite statement is granted with respect to Plaintiff's breach of contract claim based on breach of the underlying note or deed of trust.

### 2. Equitable Claims

#### a. Duty of Good Faith and Fair Dealing

Plaintiff alleges Defendant has a duty of good faith and fair dealing and that Chase breached this duty when it "did not negotiate with Plaintiff in good faith." Plaintiff further states: "Defendant's orally promised that no auction would take place until a complete review of the loan modification was complete. Conduct of Defendants was not merely accidental or inadvertent but rather calculated to lure Plaintiff to believe no auction would take place while the loan was in review." (D.E. 1, Ex. A-4, p. 4.)

The Texas Supreme Court has consistently held "that a duty of good faith is not imposed in every contract but only in <u>special relationships</u> marked by shared trust or an imbalance in bargaining power." <u>Smith v. Nat'l City Mortg</u>., 2010 U.S. Dist. LEXIS 86221, *36 (W.D. Tex. Aug. 23, 2010) (quoting <u>Federal Deposit Ins. Corp. v. Coleman</u>, 795 S.W.2d 706, 708-09 (Tex. 1990) (emphasis added). "The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith." <u>Coleman</u>, 795 S.W.2d at 7-9 (citing, e.g., <u>Lovell v. Western Nat'l Life Ins. Co</u>., 754 S.W.2d 298, 302-303 (Tex.App.-Amarillo 1988, writ denied)). "Similarly, the relationship between a creditor and guarantor does not ordinarily import a duty of good faith." <u>Id</u>. (citing <u>Rodgers v. Tecumseh Bank</u>, 756 P.2d 1223, 1226-27 (Okla.1988) (no duty of good faith and fair dealing between lender and borrower)).

In this case, Plaintiff does not allege any facts suggesting he had a special relationship with Chase that would give rise to the duty of good faith and fair dealing that the Fifth Circuit has recognized in other contexts. <u>Coleman</u>, 795 S.W.2d at 709. Defendant's motion for a more definite statement is granted with respect to Plaintiff's claim for breach of duty of good faith and fair dealing.

### b. Equitable Estoppel

To establish an equitable estoppel, Plaintiff must prove "(1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge, or the means of knowledge of those facts, (5) who detrimentally relied upon the misrepresentation." <u>Schroeder v. Texas Iron Works, Inc</u>., 813 S.W.2d 483, 489 (Tex. 1991) (citing <u>Gulbenkian v. Penn</u>, 151 Tex. 412, 418, 252 S.W.2d 929, 932 (1952)).

Here, Plaintiff alleges merely that "based on the doctrine of equitable estoppel, he is entitled to a ruling that the Defendants have unclean hands and are seeking foreclosure, an equitable remedy, without an equitable basis for such foreclosure." (D.E. 1, Ex. A-4, p. 4.) Plaintiff does not identify a false representation of fact or concealment of material facts by Chase, made with knowledge of those facts. Nor does Plaintiff indicate that Chase intended any such representation or concealment to be relied upon to Plaintiff's detriment, or that such reliance occurred. Accordingly, Defendant's motion for a more definite statement is granted with respect to Plaintiff's equitable estoppel claim.

### 3. Negligent Misrepresentation

Negligent misrepresentation requires showing: (1) that the informant supplied false information in a pecuniary transaction; (2) that the information was supplied for the guidance of others in their business transactions; (3) that the claimant justifiably relied upon this information; (4) that the claimant suffered a pecuniary loss; and, (5) that the informant failed to exercise reasonable care or competence in obtaining or communicating the information to the injured party. Bluebonnet Sav. Bank v. Grayridge Apartment Homes, Inc., 907 S.W.2d 904, 908 (Tex. App.--Houston [1st Dist.] 1995, writ denied).

"[T]he tort of negligent misrepresentation frequently involves a defendant's statement that a contract exists, upon which plaintiff relies, only to later discover that the contract has been rejected or was never completed. Thus, negligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties." Airborne Freight Corp., Inc. v. C.R. Lee Enter., Inc., 847 S.W.2d 289, 295 (Tex.App.-El Paso 1992, writ denied).

Here, Plaintiff alleges that Defendant "made representations concerning the mortgage while in review and failed to disclose that the residence would be auctioned on November 2, 2010." Plaintiff further states: "These matters on which Defendant's possessed far greater knowledge that Plaintiff, and which were false at the time they were made or were failures to disclose material facts which Defendant either knew were false or were made by Defendant recklessly without regard to the truth of the matter stated, and which were relied upon by Plaintiff to Plaintiff's damage and detriment." (D.E. 1, Ex. A-4, p. 5.)

The court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 129 S.Ct. at 1949-50. Rather, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. at 1949. Here, the Original Petition does not contain any factual allegations demonstrating that Chase supplied Plaintiff with false information, let alone that Chase knew of the falsity of any representations made to Plaintiff. Nor does the Petition allege that Plaintiff relied on such representations to his detriment.

Moreover, the mere existence of a loan modification agreement, without more, would not support a claim for negligent misrepresentation. Texas courts are in agreement that postponement of a foreclosure sale to allow the debtor additional time to attempt to reinstate the loan does not, without more, entail a waiver of the lender's right to foreclose. See Sky/RGS Properties, Ltd. v. First National Bank, 1996 WL 707014, * 6 (N.D.Tex. Dec. 4, 1996) (citing Veltmann v. Hoffman, 621 S.W.2d 441, 442 (Tex. Civ. App.--San Antonio 1981, no writ) ("We know of no case holding that a lienholder who, at the request of the debtor, postpones a nonjudicial foreclosure sale in order to afford the debtor an opportunity to avoid loss of his land

is to be penalized by being deprived of the right to foreclose. If there were such a case, we would be reluctant to follow it in view of the facts disclosed by the record before us."); Bluebonnet, 907 S.W.2d at 911-12 (holding that the mere fact that a lender had repeatedly passed on a noticed foreclosure sale did not constitute a waiver of its right to foreclose).

Defendant's motion for a more definite statement is granted with respect to Plaintiff's claim for negligent misrepresentation.

### 4. Deceptive Trade Practice Act ("DTPA")

Plaintiff alleges that "[b]ased on the foregoing allegations set forth above," Defendant engaged in practices prohibited by §17.46 of the Texas Business & Commerce Code. Specifically, Plaintiff pleads violations of Section 17.46(b)(5) and Section 17.46(b)(7). (D.E. 1, Ex. A-4, p. 5-6.) Plaintiff also contends Defendant "knowingly made false or misleading statements of fact concerning the mortgage." (Id. at 6.)

To recover under the DTPA, Plaintiff must prove that he is a "consumer," that Defendant engaged in a false, misleading, or deceptive act prohibited by the DTPA, and that the act constituted a producing cause of Plaintiff's damages. See Doe v. Boys Clubs, 907 S.W.2d 472, 478, 38 Tex. Sup. Ct. J. 732 (Tex. 1995); Tex. Bus. & Com. Code § 17.50(a)(1). A consumer is an individual who "seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4). Under the DTPA, goods include "real property purchased . . . for use," § 17.45(1), and services include "services furnished in connection with the sale . . . of goods." § 17.45(2). The goods or services sought by the "consumer" must form the basis of the complaint. See Knight v. Int'l Harvester Credit Corp., 627 S.W.2d 382, 388, 25 Tex. Sup. Ct. J. 135 (Tex. 1982).

Defendant argues Plaintiff has failed to show he is a "consumer" with standing to sue under DTPA §17.45(4) because Plaintiff's complaint relates to the loan of money he received from Defendant to purchase real property, and "loans of money or extensions of credit are not considered goods or services under the DTPA." (D.E. 6, p. 6) (citing Riverside v. Nat'l Bank v. Lewis, 603 S.W.2d 169, 174-75, 23 Tex. Sup. Ct. J. 418 (Tex. 1980)). Moreover, Defendant contends, "Plaintiff has not shown that [Chase] was the original lender on the Note, and therefore there are no facts establishing that [Chase] had any dealings with Plaintiff at the time the loan was executed." (Id.)

Defendant is correct that, in 1980, the Texas Supreme Court held a pure loan transaction fell outside the DTPA because money is neither a good nor a service. Riverside v. Nat'l Bank v. Lewis, 603 S.W.2d 169, 174-75, 23 Tex. Sup. Ct. J. 418 (Tex. 1980). Subsequently, however, Texas law has departed from this general rule. See Flenniken v. Longview Bank & Trust Co., 661 S.W.2d 705, 707, 26 Tex. Sup. Ct. J. 492 (Tex. 1983).

In Flenniken, the Texas Supreme Court held that plaintiff, who had purchased a house from a seller via a financing scheme with defendant, a bank, was not required "to seek or acquire goods or services from the bank in order to meet the statutory definition of consumer[.]" Id. (emphasis in original). The court held: "[p]rivity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA. A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint." Id. (citations removed) (emphasis added). The court concluded that, in that case, the plaintiff had standing as a "consumer" because, from his perspective, "there was only one transaction: the purchase of a

house. The financing scheme [the seller of the house] arranged with the Bank was merely his means of making a sale." The bank's allegedly unconscionable actions "arose out of" plaintiff's transaction with the seller. Id. As such, the Bank was subject to the same liability under the DTPA as the seller. Id.

Accordingly, Plaintiff does not lack standing to sue simply because the basis of his complaint is a loan of money he received from Defendant to purchase his home. That being said, Plaintiff must demonstrate his purchase of a home forms the basis of his complaint and that Chase's alleged violations of the DTPA "arose out of" the transaction in which Plaintiff purchased the home. See id. Chase correctly points out that Plaintiff has not alleged any facts establishing that Chase had any dealings with Plaintiff at the time the loan was executed. (D.E. 6, p. 6.)

In addition, to succeed on his DTPA claim, Plaintiff must show Defendant committed an act prohibited by the DTPA, causing him damages. Section 17.46(a) of the DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce[.]" Section 17.46(b) defines the term "false, misleading, or deceptive acts or practices" as including, but not limited to, in relevant part, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not[,]" §17.46(b)(5), and "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another[,]" §17.46(b)(7).

Plaintiff provides no factual allegations to support that Chase violated the specified provisions of the DTPA. Defendant's motion for a more definite statement is granted with respect to Plaintiff's DTPA claim.

### 5. Negligence

Negligence consists of three essential elements: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately resulting from that breach. El Chico Corp v Poole, 732 S.W.2d 306, 311 (Tex. 1987), superseded by statute on other grounds as stated in J.D. Abrams, Inc. v. McIver, 966 S.W.2d 87 (Tex.App. – Hous. [1st Dist.], 1998). The duty owed by a professional to his client derives from their contractual relationship and requires that the professional "use the skill and care in the performance of his duties commensurate with the requirements of his profession." I.O.I. Systems, Inc. v. City of Cleveland, Texas, 615 S.W.2d 786, 790 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.). Liability attaches only for failure to exercise reasonable care and skill in accordance with those requirements. Id.; see also Federal Sav. and Loan Ins. Corp. v. Texas Real Estate Counselors, Inc., 955 F.2d 261, 265 (5th Cir. 1992).

Plaintiff alleges that Chase was negligent in handling Plaintiff's mortgage by "wrongfully auctioning off the residence" and that Chase's actions proximately caused Plaintiff injury. (D.E. 1, Ex. A-4, p. 7.) However, Plaintiff does not indicate what standard of care applied to Chase's conduct in auctioning off the residence. Nor does Plaintiff allege any facts suggesting Chase's conduct fell below any applicable standard of care. Elsewhere in the Original Petition, Plaintiff alleges that Chase breached an alleged agreement not to auction off the residence and that Chase failed to provide adequate notice or opportunity to cure. (Id. at 3.) As discussed above, such allegations might, if more fully articulated, provide the substance of a breach of contract claim. But they do not establish the elements of a negligence claim.

Accordingly, Defendant's motion for a more definite statement is granted with respect to Plaintiff's negligence claim.

### IV.     Temporary Restraining Order

Plaintiff also requested that the Court grant a Temporary Restraining Order (TRO) restraining foreclosure of his home. (D.E. 1, Ex. A-4, p. 7.) Plaintiff indicated his home was to be auctioned on November 2, 2010. (Id. at 5.) He filed his Original Petition on November 1, 2010. However, the action was not removed to this Court until November 11, 2010. (D.E. 1.) There is no indication from Plaintiff's complaint that foreclosure did not occur as scheduled. The Fifth Circuit has "consistently found that a request for injunctive relief is moot when the event sought to be enjoined has occurred." Bayou Liberty Ass'n v. United States Army Corps of Eng'rs, 217 F.3d 393, 396 (5th Cir. 2000) (citing Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1989)). Accordingly, Plaintiff's request for a TRO is denied as moot.

### V.     Conclusion

For the reasons stated above, Defendant JP Morgan Chase Home Finance, LLC's Motion to Dismiss for Failure to State a Claim, or, in the Alternative, for More Definite Statement (D.E. 6) is DENIED IN PART and GRANTED IN PART. Specifically, Defendant's Motion to Dismiss Plaintiff's Claims is DENIED. Defendants' Motion for a More Definite Statement is GRANTED with respect to all of Plaintiff's claims. Plaintiff has fourteen (14) days to amend his complaint to satisfy the pleading standards of Fed. R. Civ. P. 8(a)(2).

SIGNED and ORDERED this 15th day of December, 2010.

_____
Janis Graham Jack
United States District Judge